OPINION
{¶ 1} This appeal is taken from a final judgment of the Juvenile Division of the Geauga County Court of Common Pleas. Kimberly Palladino ("appellant") appeals the trial court's judgment terminating her parental rights and granting permanent custody of her minor son, James Palladino ("James"), to Geauga County Job and Family Services ("GCJFS"). For the foregoing reasons, we affirm the decision of the trial court in this matter.
{¶ 2} James Palladino was born the son of John and Kimberly Palladino on September 3, 1996. Soon after the birth of his son, John Palladino began to exhibit signs of Spinal Muscular Atrophy, a degenerative condition, which resulted in his confinement to a wheel chair and subsequent placement at Heather Hill Nursing Home. Soon after the onset of John Palladino's illness, Kimberly and John divorced.
{¶ 3} On August 27, 2000, appellant was arrested and charged with driving under the influence of alcohol, failure to restrain a child, and child endangering. In addition to having a blood alcohol level of .132% at the time of arrest, appellant was also found to be homeless. On September 6, 2000, the Chester Township Police Department filed a complaint alleging that appellant's four-year old son, James, was neglected and dependent. Subsequently, GCJFS was joined as a party to the action and Karen Mazala was appointed Guardian Ad Litem ("GAL") to represent the interests of James Palladino.
{¶ 4} At the October 10, 2000 pretrial hearing, James was placed in the temporary custody of GCJFS, with appellant being granted supervised visitation. An adjudicatory hearing was held on November 8, 2000. At the hearing, both appellant and John Palladino entered pleas of true to an amended complaint acknowledging that James was a neglected and dependent child. As a result, James remained in the temporary custody of GCJFS with appellant retaining her rights to supervised visitation.
{¶ 5} Subsequently, a case plan was adopted, and the GAL conducted an investigation. The GAL's investigation indicated that appellant had successfully met the objectives of the case plan and, as a result, the GAL recommended reunification for appellant and James. On August 27, 2001, appellant was awarded legal custody of James. Additionally, GCJFS was ordered to provide protective supervision for James and appellant also agreed to attend an outpatient treatment program and submit to random drug and alcohol screenings. Unfortunately, this reunion was to be short lived as appellant tested positive on a subsequent breathalyzer test, conducted on Oct. 6, 2001.
{¶ 6} At a hearing conducted on October 9, 2001, James was placed back in the temporary custody of GCJFS. In its judgment entry, the trial court stated: "* * * despite counseling and drug and alcohol treatment made available to Kimberly Palladino, evidence was presented that clearly and convincingly establishes that she has begun using alcohol again. Further, Kimberly Palladino is currently residing in a condemned home that, by her own testimony, is infested with rats and unsafe for a minor child. There is reason to be concerned about Kimberly Palladino's mental stability, she has recently contemplated suicide."
{¶ 7} At a review hearing on November 14, 2001, the trial court continued the GCJFS' temporary custody status of James Palladino. Also, the court amended appellant's case plan requiring an updated drug and alcohol assessment of appellant. On November 27, 2001, Katherine Makley was appointed as the new GAL for James Palladino.
{¶ 8} GCJFS filed a motion for permanent custody with the trial court on February 21, 2002. After a three-day hearing, the trial court terminated the parental rights of appellant and John Palladino in a judgment entry journalized on May 10, 2002. This timely appeal followed, and appellant asserts the following assignment of error for our review:
 {¶ 9} "[1.] The trial court erred when it found by clear and convincing evidence that the Motion for Permanent Custody should be granted."
{¶ 10} Within her sole assignment of error, appellant raises the following arguments: "The trial court failed to fully discuss the factors of O.R.C. 2151.414(D) in making its determination that permanent custody is in the minor child's best interests and its determination was against the manifest weight of the evidence." Appellant also claims that the "agency failed to establish by clear and convincing evidence that the child cannot be placed with either parent within a reasonable period of time or should not be placed with either of the parents."
{¶ 11} For the sake of clarity, we will first address the trial court's determination that James could not be placed with either parent within a reasonable period of time and that James should not be placed with either of his parents pursuant to R.C. 2151.414(E)(1).
{¶ 12} Generally, parents have a paramount right to custody of their minor children. In re Murray (1990), 52 Ohio St.3d 155. However, this right is not absolute.
{¶ 13} In the present case, the trial court had the authority to grant permanent custody of the child to GCJFS if the court determined, by clear and convincing evidence, "that it is in the best interest of the child to grant permanent custody to GCJFS and that the child, not being abandoned or orphaned, cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." R.C. 2151.414(B)(1); In re Jacobs (Aug. 25, 2000), 11th Dist. No. 99-G-2231, 2000 Ohio App. LEXIS 3859. In addressing the question of whether the child can be placed with either of its parents within a reasonable amount of time under R.C. 2151.414(E), the court must consider all relevant evidence before making this determination. Id. The juvenile court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the conditions enumerated in R.C. 2151.414(E)(1) through (12) exist with respect to each of the child's parents. Id.
{¶ 14} Clear and convincing evidence is more than a mere preponderance of the evidence. Instead, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368; Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence. In the Matter of Taylor (June 11, 1999), 11th Dist. No. 97-A-0046, 1999 Ohio App. LEXIS 2620.
{¶ 15} R.C. 2151.414(E) states in pertinent part: "* * * If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent: (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
{¶ 16} Therefore the issue is not whether the parent has substantially complied with the case plan, but "whether the parent has substantially remedied the conditions that caused the child's removal." (Emphasis sic.) In re Shchigelski (Oct. 20, 2000), 11th Dist. No.99-G-2241, 2000 Ohio App. LEXIS 4900, quoting In re McKenzie (Oct. 18, 1995), 9th Dist. No. 95CA0015, 1995 Ohio App. LEXIS 4618.
{¶ 17} In the present case, the trial court found that the parents had failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home, thus establishing R.C. 2151.414(E)(1).
{¶ 18} In particular, the trial court found that initially, James was removed from appellant's custody due to her arrest for driving under the influence as well as the fact that appellant was homeless at the time of her arrest. Although appellant adhered to the subsequent case plan and was awarded custody of James in hopes of a new beginning, appellant's prosperity was short lived. Upon the return of James to her custody, the trial court noted in its judgment entry that appellant celebrated by going out "on a beer drinking binge with her child present." Subsequently, the trial court was forced to take James away for a second time on October 11, 2001, when appellant failed a breathalyzer test, in addition to housing James in a home admittedly infested with rats and "little critters" for at least three weeks. In taking James away from appellant for the second time, the trial court also found that appellant had "deceived the court, caseworkers, and professionals working with her into believing that her alcohol dependency was in remission."
{¶ 19} Although appellant has recently remarried, the record indicates that her current husband admits to being illiterate, and brings little in the way of financial support to the household. Appellant has been working since December 2001, as a caregiver. However, appellant states that she is only working approximately 18 hours per week. The total annual income of appellant and her current spouse is approximately $10,000 per year. The record also indicates that appellant's current husband has a family history of sexual abuse and violence. Additionally, the trial court found that "appellant has recently tested positive for alcohol in random breath tests taken while living in the company of her current husband." This further reinforces appellant's repeated inability to remedy the alcohol abuse problem initially responsible for the suspension of her parental rights.
{¶ 20} The record before us clearly and convincingly establishes that appellant has failed "continuously and repeatedly" in her attempts to substantially remedy the conditions that initially resulted in James being taken away from her. Furthermore, we agree with the trial court, that John Palladino's commitment to Heather Hill nursing home, as well as his grim prognosis for recovery, prohibit him from being considered as a viable option for James as well. This point is reinforced by the fact that John Palladino is not a party to the case before us. For the foregoing reasons, we cannot say the trial court erred in reaching its conclusion under R.C. 2951.414(E)(1).
{¶ 21} Having held that the trial court's finding under R.C.2151.414(B)(1), (E)(1) was correct, we will now proceed to address appellant's concerns as they apply to the "best interest of the child", as required by R.C. 2151.414(D).
{¶ 22} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates that the juvenile court must consider all relevant factors, including, but not limited to, the following: "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."
{¶ 23} We now turn to the case at bar. In its judgment entry granting permanent custody of James to GCJFS, the trial court made the initial determination under R.C. 2151.414(B)(1) that the child was neither abandoned nor orphaned, but that he could not be placed with either parent within a reasonable time or should not be placed with the parents. The court then proceeded to the second prong of the statutory analysis, to wit: a determination that it was in the best interest of the child to grant permanent custody to GCJFS. In doing so, the trial court stated that it had considered all relevant factors, including those listed in R.C. 2151.414(D).
{¶ 24} This court has held on several occasions that the provisions of R.C. 2151.414(D) are mandatory and "must be scrupulously observed." In re Hommes (Dec. 6, 1996), 11th Dist. No. 96-A-0017, at 4, 1996 Ohio App. LEXIS 5515. See, also, In re Ethington (July 23, 1999),11th Dist. No. 98-T-0084, 1999 Ohio App. LEXIS 3419, *8; In re Alexander
(Dec. 19, 1997), 11th Dist. No. 96-T-5510, at 6-7, 1997 Ohio App. LEXIS 5742. Thus, the failure to discuss each of the factors set forth in R.C.2151.414(D) when reaching a determination concerning the best interest of the child is prejudicial error. Id. There must be some indication on the record that the trial court considered all four factors found in R.C.2151.414(D) when reaching its judgment. Id. Moreover, no factor is solely dispositive of the issue, and each needs to be given proper consideration. Ethington, supra, at 9; Alexander, supra, at 7; Hommes,supra, at 6.
{¶ 25} Appellant alleges that the trial court failed to properly discuss and consider the child's desire to maintain a relationship with her pursuant to R.C. 2151.414(D)(2). In support of her argument, appellant claims that the GAL failed to investigate and express the child's wishes in this case. Appellant is incorrect in her assertion. As mentioned in our earlier analysis, a GAL has been assigned to this case at all times. In fact, Katherine Makley, appointed as GAL on November 27, 2001, submitted an investigative report to the trial court on April 12, 2002. In that report, Ms. Makley confirms that she interviewed James on April 4, 2002, at the home of his foster parents. In that interview, James was asked "if he could live anywhere he wanted, where would he choose?" James responded: "With my mom, my dad. But I can't live with my dad because he lives at a nursing home." When asked if he liked living at his foster parent's house, James answered: "Yes." The GAL's report also noted a "sense of trust" between James and his foster mother. Furthermore, the GAL's recommendation, in spite of the strong bond between appellant and James, was that James would be better off with his foster family, who have also indicated their willingness to adopt James with the court's permission.
{¶ 26} The trial court specifically stated in its judgment entry that it had "considered the guardian ad litem's report that was submitted prior to the hearing * * *." The GAL's report confirmed that James had in fact been interviewed, and as a result, his wishes were conveyed to the trial court for consideration. Furthermore, the trial court stated: "the court has given due weight and consideration to the child's strong desire to maintain a relationship with his mother."
{¶ 27} Appellant also contends that the trial court failed to discuss R.C. 2151.414(D)(4). Appellant is also incorrect in this assertion. The trial court's judgment entry specifically states: "Termination of parental rights is necessary in order for the child to have a legally secure placement in a safe and nurturing home environment." The trial court also states: "The child's mother has demonstrated that when she is under the influence of alcohol she will flagrantly put the child at risk by driving with the child while intoxicated. Also, if the court were to return the child to the mother's custody there is a strong likelihood that the child would have to be removed from his mother's custody again due to his mother's alcohol dependency." The foregoing discussion fully indicates that the trial court satisfied the requirements of R.C. 2151.414(D)(4) in its judgment entry.
{¶ 28} Appellant does not dispute that the trial court discussed the custodial history of the child and properly considered the relevant relationships in its judgment entry pursuant to R.C. 2151.414(D)(1), (4). Furthermore, the record is clear that the trial court complied with the remaining requirements of R.C. 2151.414(D). For the foregoing reasons, appellant's argument that the trial court failed to properly consider and discuss the factors in R.C. 2151.414(D) is without merit.
{¶ 29} Lastly, appellant claims that the trial court's termination of her parental rights was against the manifest weight of the evidence. A trial court's judgment terminating parental rights and awarding permanent custody to an agency will not be reversed as against the manifest weight
of the evidence if it is supported by clear and convincing evidence. Inre Litz, 11th Dist. No. 2001-G-2367, 2001 Ohio 8903, 2001 Ohio App. LEXIS 5061, at *13.
{¶ 30} At the hearing, GCJFS presented sixteen witnesses and thirty-two exhibits. For purposes of review, we will only highlight the portions of the testimony relevant to the trial court's finding in this matter.
{¶ 31} The first witness to testify was Ms. Mazala. Ms. Mazala was the first GAL appointed in appellant's case. Ms. Mazala testified that appellant has a history of drinking and abuse towards other people. She also stated that she believed that appellant "had returned to her pattern of drinking and lying", and appellant " was a compulsive liar and unable to provide the safe and stable environment that James needs."
{¶ 32} Another witness that testified was Shari, a licensed foster mother, who has served as James' foster mother since January 25, 2002. Shari testified that since James has been living with her, his performance at school has greatly improved and there has been marked improvement in his social skills as well.
{¶ 33} Mr. Pollack, appellant's chemical dependency counselor through September of 2001, then testified that appellant had not completed her goals regarding anger management. Mr. Pollack also testified that appellant's recent behavior indicated that she had suffered a relapse in regards to her alcohol dependency.
{¶ 34} Psychologist Phyllis Maris testified that James' ability to control his anger had increased shortly after being placed with his foster family. Ms. Maris also testified that while James had a strong bond with appellant, James would continue to be traumatized if James were to go back to appellant and her past behavior continued.
{¶ 35} Kim Hale attended a seventy-two hour alcohol treatment program with appellant in November 2000. Ms. Hale testified that in March of 2001, appellant began contacting her by phone. Ms. Hale further testified that appellant admitted to her that she had begun drinking again and was having problems with the breathalyzer tests because of it. During the phone calls, appellant also disclosed her various methods used to disguise her drinking. Ms. Hale also stated that appellant came over to her house to drink because "she had gotten James back and wanted to celebrate." On that day, the record indicates appellant brought James with her to Ms. Hale's home and proceeded to drink heavily in the presence of her son. Ms. Hale also testified that appellant has been known to consume at least twelve beers in one sitting while in her presence.
{¶ 36} Jean Gehring is the social worker assigned to appellant's case. At the hearing, Ms. Gehring testified that appellant has failed to comply with her court ordered case plan. Ms. Gehring reported that appellant has failed to attend her Alcoholics Anonymous meetings with any type of regularity, expressed thoughts of suicide, failed to attend parental and individual counseling sessions, and as recently as December 31, 2001, tested positive on a breathalyzer test. Furthermore, Ms. Gehring stated that James has become calmer and is better able to relate to people since moving in with his foster parents.
{¶ 37} Michelle Warren, a social worker, also testified that as she was transporting James to a visit with his mother, James told Ms. Warren that on one occasion, "a friend of his mother's had forced him to drink beer against his wishes." Furthermore, Ms. Warren testified that appellant has missed at least one scheduled visitation with James, while arriving an hour late to another. Ms. Warren also confirmed James' improved behavior since moving in with his foster family.
{¶ 38} The record is full of testimony that indicates appellant has failed to rehabilitate herself to the point of being able to provide for James' well being. A close examination of the record indicates that appellant is not ready to accept responsibility for her actions. During her testimony, appellant accused the other witnesses of lying, but when asked to provide a reason as to why they would lie, appellant could not do so. The record also indicates that appellant continues to jeopardize the life of her son by abusing alcohol in his presence, transporting him in the vehicle while under the influence of alcohol, and housing him in potentially dangerous dwellings. Appellant's repeated failure to attend AA meetings, failure to respond to requests for breathalyzer tests, and the actual failure to pass breathalyzer tests indicate that she has indeed failed to rehabilitate herself.
{¶ 39} As a result, we hold that the record clearly and convincingly supports the trial court's decision to award permanent custody of James Palladino to GCJFS. Based on the foregoing reasons, appellant's sole assignment of error is not well taken and without merit. The decision of the trial court in this matter is hereby affirmed.
DONALD R. FORD, J., ROBERT A. NADER, J., concur.